Thomas Aloi, J.
This is a motion made pursuant .to CPLR 3212 by plaintiff C. 0. Falter, Inc., as insured fo,r a declaratory judgment against defendant North River Insurance Co., as insurers, for the purpose of determining that the general liability insurance policy issued by the defendant insurance company afforded coverage for ithe counterclaims asserted by Congel-Reuter, Inc. The defendant has cross-moved for summary judgment, pursuant to CPLR 3212 in opposition to plaintiff’s motion. It is conceded that neither Crum & Forster Insurance Companies nor United States Fire Insurance Company has any obligations with .respect to .the claim herein.
The facts indicate that plaintiff, C. .0. Falter, Inc. (hereinafter referred to as Falter) as subcontractor, entered into an agreement with Congel-Reuter, Inc. (hereinafter referred to as, Congel) as contractor, to construct a sewage treatment facility including a chemical treatment building (hereinafter referred to as building), in Brockport, New York. As a condition of said agreement, Falter was required to carry contractors public liability insurance for property damage in the amount of $150,-000 for each accident and $500,000 in the aggregate including coverage for explosion. Falter .purchased an insurance policy which included general liability coverage, contractual liability coverage and completed operations coverage from the North River Insurance Company (hereinafter referred to as North River) who underwrote the policy from November 10, 1972, to November 10,1973.
One requirement for the .construction of the building was the installation of an underground electrical conduit system. Consequently Falter contracted in April, 1972, with the Haines Construction Co. (hereinafter referred to as Haines), to perform the excavation for the electric conduit to the said building. Falter claims that his contractual obligations with Congel were fulfilled on or about August 1,1972, when he finished his work and relinquished his keys to the building, save certain minor repairs completed in October/November, i.e. clean floors and touch-up paint.
On December 6, 1972, a natural gas explosion damaged the building. Plaintiff alleges that the explosion was caused by *983 a break in the gas line which was damaged about the time when the excavation by Haines was being made. Plaintiff asserts that the strain on the gas line eventually caused a rupture which precipitated the explosion.
Immediately after the explosion Falter notified .the Young Agency, the agency selling the afore-mentioned policies, about the explosion. In early January of 1973, Falter again notified Congel that it had already completed the work required under the subcontract in August and therefore would not perform the same work again or .undertake the construction of the repairs. Congel notified Falter on January 22, 1973, that it would proceed with the repair of the damages and hold Falter responsible for the cost of same. On February 14, 1974, Falter commenced an action against Congel, for moneys owing, pursuant to the subcontract in the amount of $22,000. On March 20, 1974, Congel counterclaimed for $21,454.95 as the cost of .repair, plus other damages for a total of $30,000, alleging that Falter had breached its contract by refusing .to make repairs and that the explosion was caused by the negligence of Falter.
Falter requested that defendant insurance company take over the defense of the said counterclaim but the defendant refused to do so on the grounds that the policy itself, 'and certain exclusions contained within the policy, did not afford coverage to Falter under these circumstances. Thereafter, on April 19,1974, plaintiff’s motion for a declaratory judgment was commenced and defendant’s cross motion for summary judgment followed.
The duty of an insurer to defend actions brought against an insured, extends only to claims which fall within the coverage of the policy for which the insured could be held liable. (Cohn v. Jacoby, 27 Misc 2d 396.) This obligation to defend frequently extends to cases which may be groundless, false or fraudulent. (Matter of General Ind. Corp. of Amer., 256 App. Div. 172.) The determination of whether an insurance company is obligated to defend >an action brought against 'an insured by a third party is made by looking at the face of the complaint to determine if .sufficient facts have been alleged to bring the case within the parameters of the policy’s coverage. (St. Paul Fire & Mar. Ins. Co. v. Clarence-Rainess & Co., 70 Misc 2d 1082; Goldberg v. Lumber Mut. Gas. Ins. Co., 297 N. Y. 148.) In Commercial Pipe & Supply Corp. v. Allstate Ins. Co. (36 AD 2d 412, 415), the Appellate Division, Fourth Department, held that: “ ‘ Where a complaint * * * contains ambiguous or incomplete allegations and does not state facts sufficient to bring a ca'se clearly within or without the coverage, the general *984 rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint * * * within the coverage of the policy. ’ ’ ’
The courts have continually articulated the distinction and reaffirmed the principle that .the ¡obligation to defend is broader than the duty to pay. (Goldberg v. Lumber Mut. Cas. Co., supra; Commercial Bank of North Amer. v. Employer’s Ins. of Wausau, 33 A D 2d 672; Lionel Freedman, Inc. v. Glens Falls Ins. Co., 27 N Y 2d 364.) This proposition reflects the notion that the insurer’s duty to defend stems from its own contractual obligation to the insured while its ultimate liability to pay on behalf of the insured frequently depends upon the law of negligence. Accordingly, the insurer may be obligated to defend' although not held liable to pay. (Goldberg v. Lumber Mut. Cas. Ins. Co., supra.)
The North River policy insured the plaintiff only upon the happening of :an “ occurrence ”. The policy defines an occurrence as “an ’accident, including injurious exposure .to conditions which result during the policy period, and bodily injury or property damage neither expected or intended from the standpoint of the insured. ’ ’ ' Plaintiff alleges that the explosion on December 6, 1972, which ¡severely damaged ¡the building was an occurrence, within the policy period, which resulted in property damage neither expected nor intended. Therefore, it is entitled to coverage under the expressed terms of the policy.
Defendant asserts that the counterclaim of Congel contains two causes of actions, the first in contract and the ¡second in negligence; neither of which serves as the basis of any 1 ‘ occurrence ”. Although Congel’¡s counterclaim does suggest that the explosion damage was caused by the negligence of the plaintiff or its agents, ¡and that plaintiff has breached its contract in failing to repair the damage and deliver the building in accordance with the specifications of the contract, both causes of action expressly refer to the December 6 explosion/occurrenee as the cause ¡of the damage to the building and therefore properly come within the policy coverage. The .allegations in the pleadings clearly -state a claim for violation of a legal right. The fact that the charges may sound in contract or for common-law negligence is -of no real importance. The allegations were ¡sufficient .to show a potential liability under the policy. If there is any doubt as to whether the charges against an insured .state a claim within the coverage of ¡the policy, such doubt will always be resolved in favor of the insured. (See Aetna Cas. & Sur. Co. v. Martin Bros. Container & Timber Prods. Corp., 256 P. Supp. 145; *985 Floralbell Amusement Corp. v. Standard Sur. & Cas. Co., 256 App. Div. 221.)
The defendant 'avers that the policy ¡contract excludes coverage where property damage occurs in the following situations: (1) exclusion [y] [1], where the damaged property is being occupied by ithe insured at the time of the loss; (2) exclusion [y] [2] [d] [i], where operations are being performed on the property at the time that the damage occurs; (3) exclusion [y] [2] [d] [ii], where the property is the source of its own damage; (4) exclusion [y] [2] [d][iii], where the restoration, repair, or replacement of ¡the property is made necessary by reason of faulty workmanship thereon by or on behalf of the insured; (5) exclusion [z], where the work has been completed, and the damage is to work performed by the insured and arises out of the work, or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith.
In response to exclusion [y] [1], plaintiff alleges that it had relinquished the key to the building on or about August 1, 1972, upon completing its work, and in no way occupied the building at the time of .the explosion on December 6, 1972. Defendant maintains, however, that while plaintiff’s employees may not have been inside the building at the precise moment of the explosion, the plaintiff was nonetheless an occupant of the premises due to final certification not being received and the failure of the building’s owner to take complete possession. Furthermore, defendant claims that plaintiff had been in the building in October or November even though he claims to have completed his work in August. Courts have always construed terms of an insurance policy in .their ordinary sense, unless otherwise stated in the policy. (Johnson v. Travelers Ins. Co., 269 N. Y. 401.) The operative word in this exclusion is the word “occupy”. Construed in its ordinary sense and given its intended meaning, the word “occupy” suggests a continued physical presence in the building. This exclusion is intended to deprive 'an insured from the benefit of coverage for damages it pauses while “ occupying” the building. Plaintiff’s occasional trips to the building in October and/or November to make minor improvements do not suggest that it “ occupied5” the damaged property within the intent of the exclusion and at the time of the loss. In light of the foregoing, it would be a judicial indulgence in form over ¡substance to hold that because the owner had not taken physical possession of the building and final certification had not been made, plaintiff was the occupant within the meaning of the exclusion.
*986 Exclusion [y] [2] [d] [i] excludes property damage to that particular part of the property upon which operations are being performed at the time of the property damage by one on behalf of the named insured'. Following the same rationale as stated under exclusion [y] [1], no operations were being performed at the time of the explosion by plaintiff or his agents because plaintiff did not occupy ¡the building at the time of the explosion.
Exclusion [y] [2] [d] [ii] provides that there is no coverage for property damage to ‘ ‘ that particular part of any property * * * out of which any property damage arises.” Defendant maintains that the plaintiff is incorrect in asserting that since the damaged property was the building and the damaging property was the gas line, the building was not property out of which tiie damage arose. Defendant ¡submits that the term ‘1 property ’ ’ should be read to include the building with all of its appurtenant fixtures. Thus, ¡when such interpretation is given, the building is seen to have been the sou’rce of its own damage, and exclusion [y] [2] [d] [ii] is found to eliminate coverage.
There is cogent authority within the insurance industry to support the contention that this exclusion ¡should be narrowly limited, when possible, to a specific portion of the property. This court has ¡always relied on the insurance industry’s own interpretation of its policies in delineating the intent and extent of their -stated policy exclusions. The instant exclusion has been discussed in the Casualty and Surety V-olume at ¡page Dpeb-4 as stating: 1 ‘ the exclusion is clearly restricted to the particular part of the property -on which the work is being done. Thus, if a complicated machine is being worked' on by a subcontractor and an accident which can be traced to operations being performed upon a separate and identifiable part -of it damages other parts of the machine, liability for damages to -the -other parts is not excluded.”
Plaintiff has alleged that the property damage which ¡occurred did not arise -out of the operations for the construction of the building, but out of the excavation being performed when the gas line was -struck. Based upon these facts and the insurance industry’s -own interpretation -of the exclusion, [y] [2] [d] [ii] applies only to property damage to the gas line and not to the building in its entirety.
Defendant has further asserted in its defense exclusion [y] [2] [d] [iii] which excludes coverage where the “ restoration, repair or replacement ” of the property has been or is necessary -by reason ¡of faulty workmanship thereon by or on behalf of the insured. Defendant maintains that the word “property ” *987 should include both the building and the electrical -and gas lines. However, this court feels that .the same construction used, under exclusion [y] [2] [d] [ii] is applicable to the instant exclusion. The part of the property which -caused the damage is identifiable, namely the gas line, therefore it is the gas line which is the only part of the property excluded.
Under the policy, exclusion [z] states that there is no insurance for property damage to “ Avork performed by the named insured, if the damage arises out of ‘ the work or any portion thereof, or out of materials, parts or equipment furnished in connection thereAvith. ’ ” As indicated by the word “ named insured ’ ’, this exclusion -applies only to damage arising out of work performed by the plaintiff. Furthermore, the insurance industry in its F. C. & S. Bulletin at page Dpcb-5 has supplied some interpretative insight into the scope of exclusion [z]: “ Note, however, that an insured has coverage for his completed work when the damage arises out of work performed by someone other than the named insured, a subcontractor, for example ”.
Under the facts -of this case, the w-oirk which led to the explosion was the excavation by Haines Corporation, a subcontractor, around the gas line. This work was done exclusively b^ employees -of Haines. The damage to the building therefore arose out of the work of a third .party and not through anything actively done by the named insured. There is a long-standing principle of law in New York which states that mere -retention by a contractor of the right to -supervise and oversee the work of an independent subcontractor for the purposes of determining whether the work is being performed according to the prescribed contractual specifications does not create -the relationship of master -and servant. (Moore v. Wills, 250 N. Y. 426; Uppington v. City of New York, 165 N. Y. 222.)
It is not the objective -of this court to impose liability upon the insurer which it did not originally contract to accept. This court is only 'attempting to serve the interest of justice by applying thoise appropriate principles of law to the facts -of this case. It is, therefore, the opinion of this court that the plaintiff insured is entitled to coverage under its policy and a good faith defense of -CongePs pending counterclaims arising out of the December 6 explosion/occurrence by -the defendant insurance company. Furthermore, this court feel-s that defendant is liable to the insured for -the reasonable and necessary expenses which the insured has incurred in conducting this defense against C-ongel. These expenses are to include .legal fees, pending an *988 itemization of all ¡services rendered, plus court costs and disbursements. However, this court believes that the loans and interest thereon were not expenses “ reasonably and necessarily ” incurred in protecting plaintiff’s interest. Bather, they were loans for working capital, borrowed in ithe ordinary course of business and are therefore not expenses entitled to be recovered by the plaintiff.