OPINION OF THE COURT
Louis C. Benza, J.
The third-party plaintiff, the State of New York (hereinafter the State), moves for an order and judgment pursuant to section 9 (9-a) of the Court of Claims Act, CPLR 3212, and section 3120 of the Insurance Law[1] (1) for an order compelling third-party defendants, National Union Fire Insurance Company (hereinafter National) and American International Adjustment Company, Inc.,[2] to defend and indemnify the State for the acts complained of in the claim; (2) for an award to the State of the costs, disbursements, and attorneys’ fees in connection with the present proceeding; and (3) for an award to the State of the costs, disbursements, and attorneys’ fees made necessary by National’s failure to defend and indemnify the State. National cross-moves for an order pursuant to section 9 (9-a) of the Court of Claims Act and CPLR 2215 and 3212 granting it summary judgment and (1) declaring that it is not obligated to defend and indemnify the State in the personal injury action commended by claimants, and (2) awarding *804 National the costs, disbursements and attorneys’ fees for this proceeding.
Claimant Robert Schumann is an employee of Yonkers Contracting Co. (hereinafter Yonkers) who was injured while performing work on a contract let by the State to Yonkers. Pursuant to the terms of the contract, Yonkers was to obtain a general liability policy covering the State during the term of the contract. National issued the required policy.
The claim states that claimant’s injuries occurred as follows: "Mr. Schumann’s work included pre-cutting steel, which had been painted with lead based paint, with acetylene torches. Mr. Schumann was not provided with a respirator or any other means of protection from the toxic fumes which were a by-product of cutting the steel with the torches and, consequently, he suffered prolonged, direct exposure to these toxic fumes. As a result, Mr. Schumann developed lead-poisoning.”
National refused to defend the claim, alleging as one of its affirmative defenses that the occurrence which is the basis for the claim is excluded from coverage under the policy by reason of the pollution exclusion clause, which reads as follows:
"2. Exclusions.
"This insurance does not apply to: * * *
"j. (1) 'Bodily injury’ or 'property damage’ arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
"(a) At or from premises you own, rent or occupy;
"(b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;
"(c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or
"(d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:
"(i) if the pollutants are brought on or to the site or location in connection with such operations; or
"(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
*805 "(2) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.”
National argues that the clear and unambiguous reading of the exclusionary clause relied on bars coverage for the claim. The State contends that the exclusion clause does not extend to cover paint, lead, or lead-based paint, and that leaded paint is not a pollutant as defined in the policy. The State also contends that leaded paint in place, legally applied, is not a pollutant. There is no dispute between the parties that the injury alleged in the claim occurred within the covered time frame and geographical limits of the policy. The sole issue to be decided is whether the exclusion clause applies to the facts stated.
Whenever the allegations in a claim state a cause of action that "gives rise to the reasonable possibility of recovery under the policy”, the insurer must defend (Fitzpatrick v American Honda Motor Co., 78 NY2d 61, 65 [citations omitted]). The promulgation of this rule rests on the premise that the duty to defend is broader than the duty to indemnify (supra, at 65). Once the obligation to defend is determined, the possibility of a final determination in favor of the insurer, based on fault or policy coverage, is not relevant for a determination on the merits of the underlying action (supra, at 65; Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d 66; Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640; Seaboard Sur. Co. v Gillette Co., 64 NY2d 304). If the insurer is to be relieved of its obligation under the policy to defend, it is obligated to “ 'demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions’ ” (Niagara County v Utica Mut. Ins. Co., 80 AD2d 415, 420-421 [citation omitted]). "The general rule is that the insurer must defend provided that some of the allegations fall within the coverage provisions of the policy” (supra, at 420).
Here the claim clearly defines the negligence of the insured to have been its failure to supply claimant with the necessary protective mask that was required when claimant was performing the operation which allegedly caused his injury. Even if we accept the argument that an injury caused *806 by the discharge of noxious fumes resulting from cutting steel beams coated with lead-based paint is excluded from coverage, National must still defend as the "reasonable possibility [exists] that the insured may be held liable for some act or omission covered by the policy” (Meyers & Sons Corp. v Zurich Am. Ins. Group, 74 NY2d 298, 302 [citation omitted]). Here, the failure to provide claimant with an appropriate protective device gives rise to exposure — covered by the policy and not excluded by the pollution exclusion clause. In a case particularly on point, the Court of Appeals of Louisiana, Fourth Circuit, held as follows: "We view the worker’s injury in such a case as arising not from the discharge of sandblasting matter into the atmosphere but from the failure to provide appropriate protective masks and other apparel. Liability (if any) for the injury arises not from polluting the atmosphere but from obliging others to work with inadequate protection in an atmosphere known to be polluted” (Connor v Farmer, 382 So 2d 1069, 1069-1070).
What was known, or not known, at the time of the injury as to the danger involved in cutting steel coated with lead-based paint without a mask has not been revealed. The statutory provisions of the Labor Law alleged to have been violated include section 241 (6), which, in turn, references the rules of the Industrial Commissioner. Subdivision (d) of 12 NYCRR 23-1.26 (Lead fumes and dust from structural steel) reads as follows: "Flame-cleaning or flame-cutting operations. Unless suitable local exhaust ventilation is provided, all persons performing flame-cleaning or flame-cutting operations on metals that have been coated with any compound containing lead or any other substance which may create toxic fumes when heated, and all persons located within a radius of 15 feet of such operations, shall be provided with approved respirators.” Any violation of said statutory provisions and rules which result in injury would not fall within the exclusionary clause of the insurance policy.
Even if the claim did not include allegations that Yonkers had failed to provide claimant with appropriate protective devices, the court would not be inclined to rule that, as a matter of law, the circumstances giving rise to this alleged injury fall squarely within the policy’s pollution exclusion. Firstly, in New York, there is evidence of a reluctance to absolve insurers from any responsibility solely because the injury in question resulted from the injured party’s contact with a substance that, in other circumstances, could be consid *807 ered a pollutant. Thus, in Karroll v Atomergic Chemetals Corp. (194 AD2d 715), the Second Department held that despite the existence of an all-inclusive[3] pollution exclusion in the policy, a liability insurer was required to defend its insured in an action brought by a bulldozer operator who was accidentally sprayed with sulfuric acid while working. "As the insurer, the appellant must demonstrate that the exclusion applies in this particular case and that it is subject to no other reasonable interpretation [citation omitted]. Because the exclusion clause may be reasonably interpreted to apply only to instances of environmental pollution, we find that the court did not err in holding that the exclusion did not apply in this case.” Secondly, the express language of the relevant portion of the exclusion does not appear to encompass the specific activity in which claimant was engaged.
In construing an insurance policy, the court must examine " 'the entire contract to determine its purpose and effect and the apparent intent of the parties’ ” (Meyers & Sons Corp. v Zurich Am. Ins. Group, 74 NY2d 298, 303, supra [citation omitted]). Any ambiguities, particularly those found in an exclusionary clause, must be construed against the insurer (Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356, 361). Further, "[e]very clause or word in an insurance contract is deemed to have some meaning” (Theatre Guild Prods. v Insurance Corp., 25 AD2d 109, 111, affd 19 NY2d 656), and "a policy’s terms should not be assumed to be superfluous or to have been idly inserted” (Bretton v Mutual of Omaha Ins. Co., 110 AD2d 46, 50, affd 66 NY2d 1020). As set forth above, the pollution exclusion clause lists four separate situations in which activity of the insured will not be covered (see, insurance policy, para 2 [j] [1] [a]-[d]). National does not identify which of these provisions it is relying upon to deny coverage.
The broadest exclusion is that found in subsection (a): Injury arising out of the discharge or disposal of pollutants "[a]t or from premises you own, rent or occupy”. Although the State owns the bridge on which Yonkers was performing the demolition work, it is senseless to hold that this provision applies to the circumstances under consideration here. The policy was issued by National to Yonkers to cover liability for work performed on this one demolition project, and Yonkers, as *808 required by its contract with the State, had the State named as an additional insured party on the policy. Since both Yonkers and the State were named insureds, the provisions of the contract applied to each of them, and both were intended to be protected from claims arising out of occurrences covered by the policy (i.e., the demolition project carried out by Yonkers). Covered injuries were those which could occur as a result of that work being performed, not injuries occurring on any premises owned, leased or occupied by the State, including those which were not the subject of the contract work in question. When we view the pollution exclusion in this light, and apply it to the occurrences complained of here, subsection (a) is seen to be inapplicable. To hold otherwise would, under the facts of this case, exclude coverage for the State but not for Yonkers, as Yonkers could not be said to be the owner, lessee, or occupant of the premises.
Subsection (a) applies to altogether different situations. The exclusionary clause at issue here is a boilerplate provision used in almost all multiperil policies throughout the country. As this is the same policy issued to commercial landlords and tenants (see, e.g., Oates v State of New York, 157 Misc 2d 618), the term "premises” most reasonably applies to property owned, leased or occupied in a landlord/tenant or other long-term capacity. If it were the intent of the parties that the term "premises” include all properties of either of the insureds, or any sort of occupancy no matter how transitory or for whatever purpose, the remaining subsections, (b) through (d), would be meaninglessly superfluous.
The only subsection of the exclusion clause that appears applicable to the situation presented here is subsection (d), covering "any site or location” on which work operations are being performed. Under that subsection, the exclusion is triggered only, insofar as relevant here, if the pollutants were brought onto the site in connection with such operations. This was a demolition and repair project, and, in the absence of any proof that the lead-based paint coated steel was brought onto the site by Yonkers, it is reasonable to infer that it was already at the location as part of the underpass that was to be demolished.
The State’s motion to compel National to defend this claim is granted, and National’s motion for summary judgment declaring that it is not obligated to defend is denied.
Neither the State nor National is entitled to costs, *809 disbursements or attorneys’ fees in connection with this proceeding. Section 27 of the Court of Claims Act as herein applicable provides that costs, witness’ fees and disbursements shall not be taxed, nor shall counsel or attorneys’ fees be allowed by the court to any party. In addition, Court of Claims Act § 9 (9-a), upon which the parties rely for the relief sought, provides that "the court shall have no jurisdiction to enter a judgment against an insurer pursuant to this subdivision * * * (i) for money damages.”

. Insurance Law § 3120 has been reserved for future use by the Legislature.

. American International Adjustment Company is the duly authorized representative of National Union Fire Insurance Company of Pittsburgh, PÁ, the other third-party defendant in this matter. For the purposes of our decision, reference to the third-party defendants will be made to National.

. A review of the briefs of third-party plaintiff and third-party defendant-appellant submitted in Karroll (supra) indicates that the exclusionary clause and definition of pollutant pursuant to that case is the same all-purpose exclusionary clause as presented here.