**KELLEY–COPPEDGE, INC., Petitioner,**

v.

**HIGHLANDS INSURANCE COMPANY, Respondent.**

No. 97–0926.

Supreme Court of Texas.

Argued April 28, 1998.

Decided Nov. 12, 1998.

Rehearing Overruled Dec. 31, 1998.

Patrick J. Wielinski, Dallas, for Petitioner.

Michael S. Quinn, Austin, Robert A. Shults, Collyn A. Peddie, Houston, for Respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and ENOCH, ABBOTT and HANKINSON, Justices, join.

In this case, we consider whether Kelley–Coppedge, Inc. (KCI), an independent con-tractor, "occupied" the easement on which it was performing operations, thereby invoking the pollution exclusion clause of a commercial general liability policy. The court of appeals held that KCI did occupy the easement and therefore rendered summary judgment that KCI take nothing. 950 S.W.2d 415. We reverse and render judgment for KCI.

## I

While laying pipe along an easement, KCI, an oil and gas pipeline contractor, inadver-tently struck a Mobil Oil pipeline causing the release of 1600 barrels of crude oil. The spill damaged a third party's land upon which the easement was located.

At the time, Highlands Insurance Co. cov-ered KCI under a commercial general liabili-ty policy. After the spill, KCI notified Highlands, took steps to mitigate potential damage, and entered into agreements with Mobil and the adjoining landowner to clean up the soil in accordance with Texas Rail-road Commission standards. Highlands eventually paid to repair the Mobil pipeline and for the lost oil. When KCI presented Highlands with the cleanup costs, however, Highlands denied the claim.

KCI then sued Highlands for a declaratory judgment on Highlands's coverage obli-gations, breach of insurance contract, and attorneys' fees. Both parties moved for summary judgment. Finding that the insur-ance contract's pollution exclusion clause did not exclude KCI's cleanup costs, the trial court granted summary judgment for KCI and overruled Highlands's motion. The trial court later granted KCI summary judgment on damages for $435,000.

The court of appeals reversed and ren-dered summary judgment for Highlands. 950 S.W.2d at 419. Relying on *Tri County Service Co. v. Nationwide Mutual Insurance Co.*, 873 S.W.2d 719, 720 (Tex.App.—San An-tonio 1993, writ denied), the court held that because KCI had the right to be on the easement to perform operations, it occupied the easement for the purposes of the insur-ance policy. 950 S.W.2d at 419. Because section f.(1)(a) of KCI's policy excluded cov-erage for the release of pollutants from

premises it "owned or occupied," the court held that KCI could not recoup its cleanup costs from Highlands. *Id.* We granted KCI's petition for review and now reverse and render judgment for KCI.

## II

■ The issue we must resolve is whether the pollution exclusion clause contained in KCI's insurance policy with Highlands excluded coverage for KCI's cleanup costs. The relevant portions of the pollution exclusion clause are subsections f.(1)(a), f.(1)(d), and f.(2)(a). Exclusion f.(1) of the policy excludes coverage for:

"Bodily injury" and "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or *occupied by*, or rented or loaned to, any insured;

* * *

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor;

Exclusion f.(2) excludes coverage for:

Any loss, cost or expense arising out of any
(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants .... (emphasis added).

This dispute turns on whether or not the term "occupied by" in the policy encompasses KCI's activities on the easement. Highlands contends that "to occupy" is simply "to take up significant parts of an occupied space" or "to be there." KCI contends that something more than mere presence is needed, and that Highlands's interpretation of section f.(1)(a)

renders section f.(1)(d) meaningless and the insurance contract ambiguous as a whole.

## A

■ Initially, we note that we interpret insurance policies in Texas according to the rules of contract interpretation. *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, (Tex.1998); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). In *CBI*, we set forth guidelines courts are to follow when interpreting insurance contracts:

The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. Parol evidence is not admissible for the purpose of creating an ambiguity.

If, however, the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation, and admit extraneous evidence to determine the true meaning of the instrument.

907 S.W.2d at 520 (citations omitted). *See also Heritage Resources, Inc. v. Nations-Bank*, 939 S.W.2d 118, 121 (Tex.1996) (observing that when construing unambiguous instruments "[w]e give terms their plain, ordinary, and generally accepted meaning ..."). We must also attempt to give effect to all contract provisions so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (Tex.1951); *see also* Michael Sean Quinn, *Liability Insurance Contracts: A Primer*, 34 Tex. J. Bus. L. 2, 19–20 (1997). We proceed with these principles as our guide.

Each party argues an alternate meaning for the term "occupy" as used in the policy. An ambiguity does not arise, however, merely because the parties advance conflicting contract interpretations. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997). Only when, after applying the applicable rules of construction, a contract term is susceptible of two or more reasonable interpretations will the term be ambiguous. *Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977). We find no ambiguity in this contract.

Highlands contends that the plain meaning of "to occupy" is "to take up space." Thus, KCI's mere presence on the easement constitutes "occupation" as contemplated by the pollution exclusion clause. Because section f.(1)(a) excludes coverage for any pollutant discharge from any premises the insured "occupied," KCI cannot recover its cleanup costs. In support of its definition of "occupy," Highlands cites *Tri County,* 873 S.W.2d at 720, the only Texas case to consider this issue.

Tri County was a paving subcontractor working under contract to pave an H.E.B. parking lot. Tri County began its operations in September 1990 and finished them in December 1990. After Tri County sprayed oil on the parking lot, heavy rains washed the oil into a nearby creek. H.E.B. then removed the oil from the creek and docked Tri County for the cost of cleanup. Tri County claimed this loss under its commercial general liability (CGL) policy with Nationwide. Nationwide later denied coverage, invoking a pollution exclusion clause identical to that at issue here. Tri County then sued Nationwide.

Tri County argued that it never "occupied" the parking lot because it held no property interest in the site. After holding that the clause was unambiguous, the court of appeals held that the plain, ordinary meaning of "occupied" did not necessarily mean ownership, and was broad enough to encompass Tri County's operations. *Id.* at 721. Highlands argues that we should reach the same conclusion as the *Tri County* court and hold that KCI "occupied" the easement.

KCI, however, contends that accepting Highlands's definition of occupy would render exclusion f.(1)(d) meaningless. KCI argues that if any presence, no matter how transitory, is occupancy under section f.(1)(a), then this section excludes *all* operations of the insured, including those performed by contractors or subcontractors, regardless of whether the insured owns the property or not. Thus, section f.(1)(d)'s provision excluding coverage for the insured's operations on another's land would be surplusage. In support of this argument, KCI cites *United States Fidelity & Guaranty Co. v. B & B Oil Well Service, Inc.,* 910 F.Supp. 1172 (S.D.Miss.1995).

In that case, B & B, an oil well contractor, had contracted to rework some oil wells. A number of landowners on whose land the oil wells were located sued B & B alleging that the landowners' property had been contaminated by pollutants from B & B's operations. USF & G, which insured B & B under a CGL policy nearly identical to that between KCI and Highlands, sought a declaratory judgment that under the contracts of insurance issued to B & B, B & B had no coverage for the contamination. *Id.* at 1175.

While the court ultimately held that another provision excluded coverage, the court also held that because B & B was not an "occupier" of the premises, section f.(1)(a) of the insurance contract did not bar coverage. *Id.* at 1178–81. As here, the insurer relied on *Tri County* in arguing that the insured occupied the premises. However, the court distinguished the case from *Tri County* by framing the question before it as: "Does occasional, limited work performed by a subcontractor, such as B & B, at a well site operated and controlled by another amount to occupancy?" *Id.* at 1178. Answering the question in the negative, the court stated that "if any sort of occupancy, 'no matter how transitory or for whatever purpose,' were deemed sufficient to invoke subsection (a) of this pollution exclusion, 'the remaining subsections, (b) through (d), would be meaninglessly superfluous.'" *Id.* (quoting *Schumann v. New York,* 160 Misc.2d 802, 610 N.Y.S.2d 987, 991 (Ct.Cl.1994)). "In the court's view, ... each aspect of the 'occupancy' definition suggests something other than a transient, nonpossessory relation to the

property. Subsection (a) is thus inapplicable." *Id.* (footnote omitted). Thus, *B & B Oil Well Service* held that a well contractor reworking a well was not an occupier because its presence was too transient and nonpossessory to be occupancy.

Highlands, the court of appeals, and the *Tri County* court all rely on our decision in *Hernandez v. Heldenfels*, 374 S.W.2d 196, 200 (Tex.1963), to support their definitions of "occupy." They contend we set forth a definition of "occupy" broad enough to cover the contractor's activities in *Tri County* and the contractor's activities in the case at hand.

In *Heldenfels*, however, we implied that an "occupier" is one who has "exclusive control" of premises. *See id.* at 198. We stated:

> The thesis of the appellate court is that as Heldenfels was the occupier of the premises—the roadway in question—and Hernandez had no business with Heldenfels and was not engaged in furthering Heldenfels' interest in any way, he was necessarily a licensee. Had Heldenfels been entitled as a matter of right to an exclusive possession of the premises as against the owner, this theory might be tenable. However, as we view the record, there is no evidence that Southwestern, as the owner, granted to ... Heldenfels an exclusive right. Heldenfels Brothers had the right to occupy such portions of the roadway as were necessary for them to use in carrying out the obligations which they had assumed as a subcontractor, but they did not have the right to bar the owner and its employees therefrom.... Both Heldenfels and Hernandez were using the roadway because the interests of Southwestern as the owner required such use. Both, in a sense, were invitees of the owner and ... [e]ach owes a duty to prevent injury to the other through negligence.

*Id.* at 198–99. In sum, we suggested that for a contractor to be an "occupier" of premises,

it must have an exclusive right of possession to that premises.

In *Heldenfels*, however, the meaning of "occupied" was not at issue, and the passage that the *Tri County* court quoted was merely a recitation of the assumed fact that the subcontractor had "the right to occupy such portions of the roadway as were necessary" for the performance of its work. Thus, the *Tri County* court incorrectly stated that *Heldenfels* "articulated a definition" of "occupy." Moreover, the language quoted above suggests, like *B & B Oil Well Service*, that we intended something more than mere presence for a subcontractor to "occupy" premises.

Both parties cite *Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203 (5th Cir.1991), as support for their position. In *Gregory*, the city of Natchitoches, Louisiana, created a lake to provide for the city's drinking water supply. A gas company maintained a facility next to the lake and allegedly discharged chemicals into the lake. As a result, several landowners sued the gas company and the city. The city then filed a third-party complaint against its insurer, seeking coverage. Claiming that the city "occupied" the lake under exclusion (a) (the same as KCI's section f.(1)(a)) and was therefore excluded from coverage, the insurer denied coverage. The city claimed that, while it did own the bed of the lake, it did not own "the waters, fish, flora, or fauna of the lake." *Id.* at 205. Thus, the issue before the court was whether the city "occupied" the lake as that term was used in the insurance contract. *Id.* at 204–06.

Because the city "created the lake, owns at least a large portion of the bed, and maintains and uses the lake and its waters for a drinking water supply," the court held that the city did occupy the lake. *Id.* at 207. The court defined "occupy" as "to keep or hold for use." *Id.*[1]

---

1. At least one state court's holding is in line with *B & B Oil Well Service* and *Gregory*. *See C.O. Falter, Inc. v. Crum & Forster Ins. Cos.*, 79 Misc.2d 981, 361 N.Y.S.2d 968, 974 (Sup.Ct. 1974) ("Construed in its ordinary sense and given its intended meaning, the word 'occupy' suggests ... continued physical presence [on the premises ]. This exclusion is intended to deprive an insured from the benefit of coverage for damages it causes while 'occupying' the [premises]. Plaintiff's occasional trips to the [premises] to make minor improvements do not suggest that it 'occupied' the damaged property within the intent of the exclusion and at the time of the loss.").

We agree with KCI that if the court of appeals was correct that any presence, no matter how transitory, constitutes occupancy under section f.(1)(a), then section f.(1)(d) is rendered meaningless. Subparagraph (a) applies to releases at or from premises owned or controlled by the contractor. Subparagraph (d) broadens the scope of the exclusion to include releases at or from premises owned by a third party at which the contractor is performing operations, *but only if* the contractor brings the pollutants onto the site. By negating coverage for a contractor's entire operations at a job site, the court of appeals' interpretation leaves section f.(1)(d) nothing to exclude. Under the court of appeals' interpretation, there would be absolutely no reason to include (d) since (a) already excludes all of the contractor's operations, whether or not the contractor owns or controls the premises on which it is performing operations. Under that reading, a contractor's off-premises coverage is completely eliminated.

A reading that does give meaning to both provisions is that section f.(1)(a) refers to operations on premises owned or controlled by the contractor, while section f.(1)(d) refers to operations taking place on a third-party's premises. This reading is consistent with the plain, ordinary, and generally accepted meaning of "occupied" when read in context with the other terms in the clause, "owned," "rented," and "loaned." In short, we agree with *Gregory* that to "occupy" means "to hold or keep for use," and we conclude that KCI's interpretation of the word "occupy" in section f.(1)(a) is the only reasonable interpretation. We therefore hold that section f.(1)(a) unambiguously does not apply to exclude coverage for KCI's cleanup costs.[2]

**B**

Finally, Highlands argues that section f.(2)(a) explicitly excludes KCI from coverage for its cleanup costs. Nevertheless, Highlands waived reliance on this portion of the policy because it asserted its applicability for the first time in its motion for new trial. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex.1993) (holding that an issue not presented in a response to a motion for summary judgment cannot later be raised on appeal); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979). As a result, exclusion f.(2)(a) does not operate to exclude KCI from recovering its cleanup costs. We express no opinion on whether KCI's costs would have been excluded had Highlands not waived reliance on this section.

**III**

We hold that the term "occupied by" in this insurance policy's pollution exclusion clause does not encompass KCI's operations on a third-party's premises. The provision unambiguously excludes costs for pollution spillage from or on the insured's own premises. We therefore reverse the court of appeals and render judgment for KCI.

GONZALEZ, J., files a dissenting opinion, in which HECHT, OWEN and BAKER, JJ., join.

GONZALEZ, Justice, joined by HECHT, OWEN and BAKER, Justices, dissenting.

The Court concludes that an insured did not "occupy" the work site where it caused an oil spill, and therefore the pollution exclusion provision in the insured's commercial general liability insurance policy did not pre-

---

**2.** Highlands also claims that exclusion f. is an "absolute pollution exclusion." Nevertheless, the cases Highlands cites for support concern policies with much broader pollution exclusion clauses. *See National Union Fire Ins. Co.*, 907 S.W.2d at 519 (policies excluding coverage for the "discharge, dispersal, release or escape of pollutants, *anywhere in the world*" and *"however caused and whenever occurring"*) (emphasis added).

Even the secondary authorities cited by Highlands indicate that coverage is available under exclusion f. in certain instances, including "off-site pollution releases." Most telling, however, is that in Highlands's own policy with KCI is an endorsement entitled "Total Pollution Exclusion." This endorsement is a substitute for exclusion f. in the policy and would exclude all pollution coverage. However, by its own terms, the endorsement does not apply in the state of Texas. Because this endorsement does not apply in Texas, Highlands cannot claim that exclusion f. is an absolute pollution exclusion clause.

clude coverage. I disagree and would affirm the judgment of the court of appeals.

Natural Gas Pipeline Company of America ("NGP") contracted Kelley–Coppedge, Inc. ("KCI") to construct pipelines for NGP. Their contract expressly obliged NGP to "furnish right-of-way" as appropriate to KCI and specifically granted KCI "the right to conduct operations for the construction of pipelines (gas, water, drain and sewage) over a strip of ground fifty feet (50') in width." For a period of no fewer than nineteen days, KCI placed workers and equipment on NGP's easement in Wise County. In the course of laying pipeline along this easement, KCI's workers punched a hole in a crude oil pipeline, causing the discharge of 1,600 barrels of crude oil at the location KCI was working.

Section f.(1)(a) of KCI's insurance policy excluded coverage for pollution-related losses, damage or injuries "[a]t or from any premises, site or location which is or was at any time owned or *occupied* by, or rented or loaned to, any *insured.*" Section f.(1)(d) excluded coverage of the same at any place "on which any *insured* or any contractors or *subcontractors* working directly or indirectly on any insured's behalf are *performing operations* . . . if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor."

The Court concludes that to "occupy" means "to hold or keep for use," citing *Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203, 207 (5th Cir.1991), in support of this definition. In *Gregory,* the court concluded that the City of Natchitoches "occupied" the lake it created, even if it did not "own" the lake, because it regulated the lake levels and used the lake to supply the city's drinking water. *Id. Gregory* held that one who "holds or maintains [property] for use" also "occupies" it. *Id.* It does not follow, however, that one who does not hold or maintain property for use does not "occupy" it. Nevertheless, the *Gregory* court's construction of the term "occupy" actually supports Highland's position. In *Gregory,* the city did not have *exclusive* control over and use of the lake, but others also used it for recreational purposes.

*See id.* at 204–05. *Gregory* supports the proposition that one may "occupy" a premises without owning or having exclusive use of it.

This Court also misreads *Hernandez v. Heldenfels,* 374 S.W.2d 196 (Tex.1963), to suggest that in order for a contractor to be an "occupier" of a premises, it must have an exclusive right of *possession* to the premises. First, our interpretation of the term "occupier" in *Heldenfels* applied only to premises liability actions, not to insurance coverage. Second, not even in the context of premises liability law must an "occupier" of land actually "possess" the land. One who "is entitled to exclusive control" of a premises, even if not an owner, may be an "occupier" of the land. *See id.* at 198. Third, just because one who has an exclusive right of possession or control of a property may be deemed an "occupier" of the property does not mean that the converse is true—that one who does not have a right to exclusive possession or control of a property is *not* an occupier. Even so, while it performed its pipe-laying operations, KCI had what is tantamount to exclusive control through a contractual "right of way" on NGP's easement.

The Court's reliance on *C.O. Falter, Inc. v. Crum & Forster Insurance Cos.,* 79 Misc.2d 981, 361 N.Y.S.2d 968 (Sup.Ct.1974), and *United States Fidelity & Guaranty Co. v. B & B Oil Well Service, Inc.,* 910 F.Supp. 1172 (S.D.Miss.1995), is also misplaced. The *C.O. Falter* court construed the word "occupy" to mean "continued physical presence," not "occasional trips to the [premises] to make minor improvements." 361 N.Y.S.2d at 974. Similarly, the *B & B Oil* court concluded that "occasional, limited work performed by a subcontractor, such as B & B, at a well site operated and controlled by another" did not amount to occupancy. 910 F.Supp. at 1178. The *B & B Oil* court compared the occasional workover operations B & B performed on wells to the work of a plumber or telephone repairman. *Id.* at 1178 n. 7. KCI's physical presence on the easement, by contrast, was not occasional, limited, or brief; nor was it merely engaged in routine maintenance operations. Rather, KCI placed a crew and

heavy machinery at the job site over a period of several days.

Based on any of the preceding definitions, KCI clearly "occupied" the easement. The various constructions placed on the term "occupancy" in the preceding cases, however, are not controlling. Because the term "occupied" is not ambiguous, "it is the court's duty to give the words used their plain meaning." *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).

Based on the plain, ordinary, and generally accepted meaning of occupied, a person or thing occupies a space if it is *there*. One may occupy a vehicle, a hotel room, or even an airplane seat or bathroom for a short period of time without ever possessing or controlling it. The term occupy and its cognates are routinely defined as indicating physical presence or proximity in the automobile insurance context. *See, e.g., Genthner v. Progressive Cas. Ins. Co.*, 681 A.2d 479, 482 n. 1 (Me.1996) (citing cases deciding who could be covered as an "occupant" under general automobile insurance policies). KCI unambiguously occupied NGP's easement by being there and using it to construct a pipeline.

KCI argues that if mere presence and use of a premises constitutes occupancy under section f.(1)(a) of the policy, then section f.(1)(d) is rendered meaningless. However, as Highland contends, the two sections have independent, non-overlapping meanings because section f.(1)(a), unlike section f.(1)(d), does not exclude pollution damages on a third party's premises occupied by an insured's *subcontractor* rather than the *insured*. The policy indemnified KCI for any vicarious liability it might incur for pollution-related damages caused by a KCI subcontractor who did not bring the pollutants to the site, but excluded it for any damages for which KCI was directly responsible. Stated another way, the insurance policy provided coverage for pollution-related damages in only a narrow set of circumstances—circumstances over which KCI had minimal control

and for damages arising only out of vicarious liability.[1]

Finally, we should not hold that some redundancy or overlapping application in multiple policy provisions renders any of the provisions meaningless. It is not uncommon for contracts to have redundant terms, expressions and provisions, especially when specific provisions require regulatory pre-approval or when standard-form contracts are crafted to accommodate a wide variety of clients and circumstances. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). The use of several terms and overlapping provisions is usually intended to clarify the scope and intent of the instrument and insulate it from any misunderstanding.

Because I disagree with the Court's definition of "occupy," I dissent.

---

1. In general, an employer is not vicariously liable for the negligence of its subcontractor. *See Baptist Memorial Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998). However, an employer may be liable for the negligence of its subcontractor if the employer retains the right or power to control the manner in which the subcontractor performs its work but fails to exercise reasonable care in supervising the contractor. *See Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex.1998).