NO. 07-01-0512-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



FEBRUARY 19, 2002


______________________________




IN THE ESTATE OF JOSE SOTELLA FLORES, DECEASED


_________________________________



FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;



NO. 95-779,794; HON. LARRY B. LADD, PRESIDING


_______________________________



Before BOYD, C.J., QUINN and REAVIS, JJ.

 Elodia Flores (appellant) attempts to perfect an appeal to this Court. By letter from
this Court dated January 2, 2002, we informed her that the filing fee of $125.00 required
to perfect this appeal was outstanding and that the failure to pay same could result in the
dismissal of her case. To date, appellant has not paid the $125.00 filing fee as directed. 
Nor has she provided us with evidence illustrating that she is entitled to proceed as a
pauper.

 Due to appellant's failure to pay the filing fee, we dismiss the appeal pursuant to
Texas Rule of Appellate Procedure 42.3 (c). 

 Per Curiam 

Do not publish. 



visible\
even at night.
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-08-0335-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 10, 2009
______________________________

TAWIN SPENCE, 

                                                                                                 Appellant

v.

THE STATE OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-414,629; HON. JIM BOB DARNELL, PRESIDING
_______________________________

Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          Tawin Spence (appellant) appeals his conviction for possession of a controlled
substance. In a single issue, he contends that the trial court erred by failing to instruct the
jury that if it found the police did not have reasonable suspicion to stop him, then it could
disregard the evidence discovered during the stop. We affirm.
 
 
Background
          Lubbock police officer Shane Bledsoe was watching a known “crack house” around
midnight when he observed a Chevy Impala parked in the driveway of the residence. 
Eventually, the car left and drove past him. When it did, the officer saw no front license
plate on the vehicle. This induced him to initiate a traffic stop.
          According to Bledsoe, appellant allegedly stated that he knew the reason for the
stop because he had already been cited for lacking a front plate. Thereafter, Bledsoe
discovered that appellant had no driver’s license either. This led to the officer frisking
appellant and discovering drugs and $1,400.00 on his person. 
          The officer further detained appellant by escorting him to the squad car. As he did
so, he saw a passenger in appellant’s vehicle discard a baggie containing what was
eventually identified as crack cocaine. Eventually, appellant was arrested and charged
with the crime mentioned above.
          At trial, the officer testified that he pulled appellant over for the license plate violation
and for illegally blocking the sidewalk at the residence. On cross-examination, Bledsoe
agreed that he did not issue appellant a ticket for blocking the sidewalk and that he saw
a license plate laying on appellant’s dashboard as he approached the vehicle. 
          In turn, appellant testified at trial that he did not block the sidewalk. And, while he
acknowledged that the license plate was on his dash, he asserted that it was “all the way
up in front of the front windshield” and quite visible. So too did he request, at the close of
evidence, that the trial court “instruct the jury as to the law of the license plate” and that
once the police officer observed the license plate in the front windshield, the officer could
no longer detain him without other legitimate reason. That the jury be given an article
38.23 instruction encompassing the purported sidewalk violation also was solicited.


 Both
instructions, however, were denied. 
Law and Analysis
          Simply put, the issue before us involves whether questions of fact existed warranting
the instructions sought. Both parties agreed that without the presence of such factual
questions, neither instruction would be appropriate. Appellant also conceded that if a
factual dispute existed with regard to only one of the two bases mentioned by the officer
for stopping the car, then the instructions sought were unnecessary. With that said, we
first consider the allegation implicating the front license plate.
          Admittedly, the record contains conflicting evidence on whether the license plate
could readily be seen. Yet, all agree on the plate’s location, on the dashboard of the
vehicle behind the windshield. A question arises, however, as to whether that was a
permissible location; if it was, then it could not be used to prolong the stop. To answer
that, we look to the Texas Transportation Code. 
          Section 502.404(a) of the Transportation Code states that license plates must be
displayed on the “front” and “rear” of a vehicle. Tex. Transp. Code Ann. §502.404(a)
(Vernon Supp. 2008). If locating the plate behind the windshield, like appellant did here,
comports with that mandate, then the officer could not further detain appellant without other
legitimate reason once he saw the plate. And, to sway us to that conclusion, appellant
cites us to the opinion of State v. Losoya,128 S.W.3d 413 (Tex. App.–Austin 2004, pet.
ref’d). In Losoya, the court held that displaying a license plate on a car’s dashboard
comported with §502.404 if the plate could otherwise be seen from the front of the car. Id.
at 416. It so held because the panel deemed the word “front” ambiguous, sought to
discover the legislative purpose underlying the statute, and, upon discovering that, applied
the alleged purpose to the circumstances before it. Furthermore, according to the Losoya
panel, that purpose was simply to make sure that one could see the plate. Id. We find that
analysis and conclusion problematic for several reasons.  
          First, the Losoya court failed to explain why it deemed “front” ambiguous. It cited
no contradictory definitions of the word. Nor did it discuss any factual scenarios in which
the word could be accorded two reasonable yet conflicting interpretations. See Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 465 (Tex. 1998) (holding that a
term is ambiguous if it is susceptible to two reasonable but conflicting interpretations). 
          Second, we cannot but help recall various phrases encountered in everyday life that
incorporate the word “front” and help illustrate what it means in common parlance. For
instance, the terms “front line” or “battle front,” “go to the front of the line,” “front and back,”
“front and center,” “storm front,” “front page,” “front seat,” and “front door” are of such a
nature. Each connotes the idea of something preceding something else, or of the
beginning of an object. Indeed, if told to turn to the front page of a newspaper and read
article X, a reasonable person would undoubtedly go to the first page or beginning of the
paper to find it. Similarly, a reasonable person hearing a knock at the “front door” of his
house would most likely go to the front door, as opposed to the back or side, in response. 
So too can it be said that a reasonable person who paid to have the “front seat” of his car
recovered would most likely not be satisfied if the upholsterer covered the rear seat
instead. And, who can forget those scenes from “Hogan’s Heroes” where Colonel Klink
was repeatedly threatened with and fearful of being sent to the “Russian front”; that threat
would not have had the same impact if “front” actually meant something other than the
beginning of the battlefield whereat the two sides are actually engaging in war. It is these
common usages of the word that help define what it means.
          Admittedly, there may be situations where a common word may develop alternate
meanings in specific professions or fields. Or, it could be that those using such words
could assign new meanings to words as part of some fad or blossoming dialect. But, we
neither have nor are given by the Losoya panel any reason to believe that the legislature
sought to use any specialized meaning or adopt some slang when including “front” in §
502.404(a). And, from the aforementioned examples of how the word is used in common
parlance coupled with the area where millions of people actually locate their license plate
on their vehicle, we cannot but construe “front” to mean the area where the car begins or
the foremost part of the vehicle.


 See Blacks Law Dictionary 668 (6th ed. 1990) (defining
“front” as “[f]orepart, as opposed to the back or rear”); Dictionary.com, http://
dictionary.reference.com (last visited Aug. 3, 2009) (defining “front” as the “foremost part
or surface of anything” and “a place or position directly before anything”); Merriam-Webster, http://meriam-webster.com/dictionary (last visited Aug. 3, 2009) (defining “front”
as “the forward part or surface” and as “the foremost part of a thing”). So, given our
obligation to generally accord words their ordinary meaning, see Fitzgerald v. Advanced
Spine Fixation Systems, Inc., 996 S.W.2d 864, 865 (Tex. 1999) quoting Liberty Mut. Ins.
Co. v. Garrison Contractors, 966 S.W.2d 482, 484 (Tex. 1998), we hold that one complies
with §502.404 of the Transportation Code when the license is affixed somewhere in the
foremost or beginning area of the car. 
          Third, as recognized by the Losoya panel, the “apparent purpose of Section
502.404(a) [was] to facilitate the identification of a motor vehicle . . . .” State v. Losoya, 
128 S.W.3d at 416. That purpose, the court continued, was satisfied if the officer could
see the plate. Id. (stating that Losoya complied with the statute because the “officers
testified that they could see the license plate in the windshield”). Yet, if the test is whether
the officers can see the plate, then that frees the vehicle’s owner to place it most anywhere
so long as it can somehow be seen. Not only could it be attached to the front bumper but
also a door, hood, rear spoiler, window, fender, or any other location of the car as long as
the police could see it. And, should the owner pursue such options, then law enforcement
officials attempting to identify the car would no longer be able to simply focus upon the
front of the car. Instead, they would have to spend more time looking at all possible places
at which the plate could be. This, in turn, would most likely result in more stops for it is
much harder to focus on several areas (as opposed to one) when a car drives past at
traveling speeds, as exemplified here.


 So, the Losoya interpretation of “front” actually
impedes what it considered to be the purpose underlying the statute. 
          Finally, we also note that by appending the preposition “at” before the phrase “front
and rear,” the legislature effectively described a location as opposed to a direction or ability
to sense. “At the front” differs from “facing the front.” So too does it differ from merely
being able to see it from the front or from outside the car. The latter two concepts involve
one’s ability to perceive in general while “at the front” denotes a specific area. What this
means is that Losoya implicitly modified the obligation imposed by §502.404(a) from one
encompassing location to one of involving perception. If the latter was all that the
legislature cared about, it could have written the statute to clearly indicate that the plate
had “only to be seen” by passersby; because the legislature did not so write the statute,
we will heed the way it did write it.  
          Having found deficiencies in Losoya and having concluded that one satisfies §
502.404(a) by affixing the license in an area where the car begins, i.e. the foremost area
of the vehicle, we conclude that placing it behind a windshield is not enough, if the
windshield is located somewhere other than the front of the car. And, because the
windshield on appellant’s vehicle was not so located, he did not comply with the statute. 
Consequently, the officer was not required to find some other reason to detain him after
discovering the plate’s location. Nor was the trial court obligated to instruct the jury
otherwise.
          Accordingly, we affirm the judgment of the trial court.

                                                                           Brian Quinn
                                                                          Chief Justice


Campbell, J., concurs in result.


Publish.