**Opinion filed September 29, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00007-CV
_____

## LINDA S. NEIDERT, Appellant

## V.

## SUSAN J. COLLIER AND JOHN P. SEARLS, Appellees

On Appeal from the 70th District Court

Ector County, Texas

Trial Court Cause No. A-125,758

## M E M O R A N D U M   O P I N I O N

In this declaratory judgment action, the trial court held that Linda S. Neidert owned no interest in certain oil, gas, and other properties and also awarded Susan J. Collier and John P. Searls attorney's fees. However, the court did not dispose of a breach of contract action included in the relief sought by Susan J. Collier and John P. Searls against Linda Neidert. Therefore, the judgment was not a final, appealable one. We abated this appeal until such time as the trial court entered a final, appealable judgment. The trial court has now severed the breach of contract claim from the cause of action made the subject of this appeal. The judgment is now final, and

the appeal is reinstated. Because we find that two settlement and release agreements entered into by Neidert with Collier and Searls are dispositive and that appellate attorney's fees must be conditional, we modify and affirm.

John W. Peery and Bernice C. Peery were husband and wife. Jeanne Alice [Sally] Peery Searls was the only child ever born to them. Jeanne Alice was married to Robert S. Searls Jr., and they had three children, the parties to this appeal, Neidert, Collier, and John P. Searls. We will refer to Robert S. Searls Jr. as "Robert" and to John P. Searls as "Searls."

John Peery died on February 1, 1970. By his will, he left his wife, Bernice, certain specific bequests that did not include any oil and gas interests. He left one-half of the rest of his property to Jeanne Alice and the other one-half to three separate trusts. One of the trusts was for Neidert's benefit, another was for the benefit of Collier, and the other for the benefit of Searls. In accordance with the provisions of the trusts, each was distributed to the named beneficiary free of any trust.

On January 10, 1985, Bernice executed a power of attorney in favor of Jeanne Alice's husband, Robert. By sometime in 1989, Robert, acting under the power of attorney from Bernice, had transferred all oil and gas interests owned by Bernice to Jeanne Alice.

Bernice died on December 28, 1993. By her will, Bernice left certain specific bequests, which did not include any oil and gas interests, to Jeanne Alice. The remainder of her estate was distributed one-half to Jeanne Alice and one-half to Jeanne Alice as trustee for Neidert, Collier, and Searls. Jeanne Alice was to receive the net income from those trusts for life and, at her death, the trust property was to be distributed to Neidert, Collier, and Searls.

Robert died on March 11, 2002. By his will, Robert left certain specific bequests to Jeanne Alice; they did not include any oil and gas interests. The remainder he left in trust for Jeanne Alice's benefit. On July 17, 2003, Jeanne Alice, in exchange for cash, stocks, and bonds, purchased all oil and gas interests owned by the trust. At Jeanne Alice's death, the trust estate, consisting of cash, stocks, and bonds, was distributed to Neidert, Collier, and Searls.

Jeanne Alice died on October 10, 2003. She left each of her children, Neidert, Collier, and Searls, certain specific bequests; the specific bequests did not include oil and gas interests. By the terms of her will, Collier and Searls received all of Jeanne Alice's interest in any oil and gas properties.

2

By virtue of the foregoing, Collier and Searls claim to be the owners of all of the oil and gas interests that had been owned by Bernice, Bernice's trust, Robert, Robert's trust, and Jeanne Alice. They do not dispute that Neidert owns the oil and gas interests she received in the distribution under the trust created in John W. Peery's will.

On May 14, 2004, Neidert, Collier, and Searls executed a "Settlement and Release Agreement." Collier and Searls assert that, by this document, Neidert released all claims against Robert's estate, Jeanne Alice's estate, and the trusts created in connection with those estates. They also claim that Neidert gave up any claims to oil and gas properties situated in Texas and New Mexico that were owned by Robert or Jeanne Alice; Neidert received cash, stocks, and bonds in consideration for the execution of the settlement and release document.

On December 23, 2005, Neidert, Collier, and Searls executed another "Settlement and Release Agreement." Collier and Searls assert that the effect of this second instrument was that, by it, Neidert released all claims in connection with Bernice's estate and trust, Robert's estate and trust, and Jeanne Alice's estate. Searls and Collier paid Neidert $161,500 in connection with this release, and Bernice's trust paid Neidert an additional $197, 403.

Claiming that Robert's transfers of oil and gas interests, both by gift and otherwise, under Bernice's power of attorney were void, Neidert declined to execute instruments that puportedly would effectuate the settlement agreements. After Neidert had declined to execute those instruments, Collier and Searls brought the underlying lawsuit for declaratory judgment. In the suit, they sought a declaration that Neidert owned no interest in the subject oil and gas properties.

Collier and Searls filed a traditional motion for summary judgment. Neidert answered the motion and filed a motion for summary judgment of her own. Prior to the hearing on Collier and Searls's motion, Neidert withdrew her motion for summary judgment.

After the hearing, the trial court granted Collier and Searls's motion for summary judgment and held that Neidert had no ownership interest in and to any assets or oil and gas properties owned by Bernice or the trusts created under her will. The trial court also held that Neidert owned no interest in any assets or oil and gas properties owned by Robert or the trusts created under his will. The trial court further held that Neidert had no ownership interest in any assets or oil and gas properties owned by Jeanne Alice. In its order, the trial court ordered that Neidert was barred and judicially estopped from claiming any ownership interests in the assets

3

and oil and gas properties owned by Bernice, Bernice's trust, Robert, Robert's trust, Jeanne Alice, and Jeanne Alice's trust.

The trial court awarded Collier and Searls attorney's fees at the trial level of $100,683, $25,000 for an appeal to the court of appeals, $10,000 for answering a petition for review to the Texas Supreme Court, and $25,000 if a petition for review were to be granted.

Neidert presents us with six issues in this appeal. First, she takes the position that gift conveyances under a power of attorney are void when the power of attorney does not authorize the attorney-in-fact to make gifts. Secondly, Neidert argues that conveyances of oil, gas, and other mineral interests by an attorney-in-fact are void unless the power of attorney specifically authorizes conveyances of oil, gas, and other minerals. Next, Neidert asserts that assignments of partnership interests are not effective when made after the partnership has terminated. In her fourth issue on appeal, Neidert takes the position that, since the types of conveyances asserted in her first three points are void, a release cannot cure those instruments. In her fifth issue on appeal, Neidert asks this question: "Could the particular Release signed by these parties be properly construed to release Linda S. Neidert's entitlement to receive her share of properties owned by the Trust of which she was a beneficiary?" Finally, Neidert takes issue with the award of attorney's fees.

Because we find them to be dispositive of this appeal, we will first address the issues related to the settlement and release of the claims made the basis of this lawsuit. Pursuant to TEX. R. APP. P. 47.1, we need not address the first three issues.

Collier and Searls's motion for summary judgment is a traditional one. *See* TEX. R. CIV. P. 166a(c). We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

Where, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied upon for its ruling, summary judgment will be affirmed on appeal if any of the summary judgment grounds advanced by the movant are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Rule 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471

(Tex. 1991).  To establish a right to recover as a matter of law, a plaintiff, as movant, must prove conclusively all elements of its cause of action.  *Safeco Ins. Co. of America v. Gaubert*, 829 S.W.2d 274, 278 (Tex. App.—Dallas 1992, writ denied).  Once the movant establishes a right to summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment.  *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979).  When reviewing a traditional summary judgment, an appellate court considers all the evidence and takes as true evidence favorable to the nonmovant.  *Am. Tobacco Co.v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).  The appellate court "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded."  *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007).

Collier and Searls assert that, by the May 14 "Settlement and Release Agreement," Neidert released all claims against Robert's estate, Jeanne Alice's estate, and the trusts created in connection with those estates.  They also claim that Neidert gave up any claims to oil and gas properties situated in Texas and New Mexico that were owned by Robert or Jeanne Alice; Neidert received cash, stocks, and bonds in consideration for the execution of the settlement and release document.

Collier and Searls maintain that, by the December 23 "Settlement and Release Agreement," Neidert released all of her claims that related to Bernice's estate and trust, Robert's estate and trust, and Jeanne Alice's estate.  Collier and Searls paid Neidert $161,500 in connection with this release, and Bernice's trust paid Neidert an additional $197,403.

A release is a contract, and the construction of it is governed by the general rules relating to contracts.  *Loy v. Kuykendall*, 347 S.W.2d 726, 728 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.).  When we construe releases, we ascertain and give effect to the intention of the parties.  *Id.*  A release must be considered as a whole in order to give effect to the general purpose and true intention of the parties with respect thereto.  *Id.*

When an unambiguous writing has been entered into, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing.  *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968).  Normally, the instrument alone will be

deemed to express the intention of the parties; it is the objective, not the subjective, intent that controls. *Barker v. Roelke*, 105 S.W.3d 75, 83 (Tex. App.—Eastland 2003, pet. denied).

Whether a contract is ambiguous is a question of law. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). The court determines the question by examining the contract as a whole, in light of the circumstances that existed when the parties entered into the contract. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). A court may conclude that a contract is ambiguous even though the parties did not plead ambiguity. *Sage Street Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993). A contract is not ambiguous if it is worded so that it can be given a certain or definite legal meaning or interpretation. *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is ambiguous when its meaning is uncertain and doubtful or when it is reasonably susceptible to more than one meaning. *Kelley-Coppedge*, 980 S.W.2d at 464; *Coker*, 650 S.W.2d at 393-94. An ambiguity does not arise just because the parties advance conflicting interpretations. 980 S.W.2d at 465. Only when a contract is susceptible to two or more reasonable interpretations, after applying the applicable rules of contract construction, is the contract ambiguous. *Id.* If a contract is ambiguous, then a fact issue exists regarding the intent of the parties, and summary judgment is improper. *Coker*, 650 S.W.2d at 394. The interpretation of an unambiguous contract is a question of law that we review de novo. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009); *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

There are additional rules governing the interpretation of releases. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 128 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 20 S.W.3d 692 (Tex. 2000). We construe general categorical releases narrowly. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). Further, we construe a release in light of the facts and circumstances surrounding its execution. *Id.* at 939.

To effectively release a claim, the releasing document must "mention" the claim. *Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434-35 (Tex. 1997); *Victoria Bank & Trust*, 811 S.W.2d at 938. That does not mean, however, that broad-form releases are forbidden. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000). The parties are not required to identify every potential cause of action related to the subject

6

matter of the release. *Id.* Valid releases may "encompass unknown claims and damages that develop in the future." *Id.* Claims clearly not within the subject matter of the release are not discharged. *Victoria Bank & Trust*, 811 S.W.2d at 938 (settlement agreement specifically limited to a particular note). Conversely, claims that are clearly within the subject matter of the settlement or release are discharged. *Id.*

We will first examine the May 14 agreement. The agreement contains various recitals regarding Robert's death, the probate of his will, and a certain testamentary trust created by him. The agreement also contains references to Jeanne Alice's death and the probate of her will. The agreement specifically provides that the parties "desire to enter into a settlement agreement resolving all claims relating to the estates of Robert Searls and Sally [Jeanne Alice] Searls which have arisen or could have arisen, known or unknown, among the Parties."

The agreement then contains the following paragraph:

> 3.1 NOW, THEREFORE, in consideration of the execution of this Agreement and the performance of the further terms as set out below, which all Parties represent is sufficient consideration, all parties release the others as follows:
>
> > a. Neidert, on her own behalf and on behalf of her family, her heirs, representatives, attorneys, successors and assigns, does fully release, demise, quitclaim, and forever discharge, Respondents and their families, their heirs, representatives, attorneys, successors and assigns of each from any and all claims (including but not limited to any claims asserted or that could have been asserted, but excluding any claims for breach of this agreement), causes of action, liabilities, damages (including attorneys' fees), and costs, whether known or unknown, and whether foreseen or unforeseen, which Neidert has ever had, or now has, or has in the future based upon the facts which occurred up to the Effective Date, including without limitation any claims relating to the valuation of the Robert Searls Trust and the Texas and New Mexico oil and gas properties and the actions of Sally [Jeanne Alice] Searls in her capacity as Independent Executrix of the estate of Robert Searls.

The December 23 agreement contains various recitals regarding Bernice's death, her estate, and testamentary trusts created by her. The agreement also contains recitals concerning Jeanne Alice's death and her estate. The parties also recited in the agreement that there were differing opinions among the parties as to certain values, methods of distribution, and payment

7

of certain loans and that "the Parties desire to enter into a Settlement and Release Agreement in connection with any and all of Linda Neidert's claims known and unknown claims resulting from the Bernice C. Peery Trust." The parties then provided as follows:

> 3.1 NOW, THEREFORE, in consideration of the execution of this Agreement and the performance of the further terms as set out below, which all Parties represent is sufficient consideration, Linda Neidert on her own behalf, her family, heirs, representatives, attorneys, successors and assigns, does fully release, demise, quitclaim, and forever discharge, release Susan J. Collier, Individually and as Trustee of Bernice C. Peery Trust and Independent Executrix of the Estate of Robert S. Searls, Jr., deceased and the Estate of Jeannene Alice Searls, deceased, John P. Searls, Individually and as former Trustee of Bernice C. Peery Trust, the Estate of Roberts S. Searls, Jr., deceased and the Estate of Jeannene Alice Searls, deceased and John L. Roberts Interiors, Inc. and the officers, directors, shareholders, partners, parent companies[,] subsidiaries, affiliates, employees, representatives, executrix's, trustees, attorneys, successors and assigns of each from any and all claims (including but not limited to any claims asserted or that could have been asserted in the suit, but excluding any claims for breach of this agreement), all causes of action, claims, liabilities, damages (including attorneys' fees), and costs, whether known or unknown, and whether foreseen or unforeseen, which Linda Neidert has or have ever had, or now have, or have in the future based upon the facts which occurred up to the Effective Date, including without limitation any claims relating to the Bernice C. Peery Trust, the Estate of Robert S. Searls, Jr., deceased and the Estate of Jeannene Alice Searls, deceased, or obligations from John L. Roberts Interiors, Inc.

We hold that, as a matter of law, the settlement and release agreements are not ambiguous. It is clear from within the four corners of the settlement and release agreements that the subject matter of the settlement and release agreements was to settle any and all of Neidert's claims to the ownership of all oil and gas interests (and other interests not involved in this lawsuit) related to John Peery, Bernice Peery, Robert Searls, or Jeanne Alice Searls or to their estates or to trusts created by them. Because the settlement and release agreements are not ambiguous and because the claims involved in this lawsuit are clearly within the subject matter of the settlement and release agreements, the trial court did not err if it granted summary judgment based upon the validity and effect of the agreements.

Neidert argues that, even if the settlement and release agreements are valid, they cannot bring life to documents executed by Robert as attorney-in-fact that were not within the scope of Bernice's power of attorney and were therefore void. We think that it is important to note that

8

the trial court only declared that Neidert did not own the oil and gas interests; it did not decide any other issues of ownership. And, based upon our holding, whether any of those instruments were void would not affect Neidert because she released any claims that she otherwise might have had, beneficial or otherwise. Neidert's fourth and fifth issues are overruled.

In her sixth issue, Neidert argues that the trial court erred when it awarded attorney's fees because they were neither equitable nor just, nor were they reasonable and necessary. The trial court held a hearing on the award of attorney's fees. At the conclusion of the hearing, it awarded Collier and Searls $100,683 in attorney's fees for work through the date of the hearing. It also awarded appellate attorney's fees as follows: $25,000 in the event of an appeal to the court of appeals; $10,000 for making and responding to a petition for review to the Texas Supreme Court; and $25,000 in the event that a petition for review is granted by the Texas Supreme Court.

Section 37.009 of the Texas Civil Practice and Remedies Code addresses costs and fees under the Declaratory Judgments Act. That section provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008). Whether to grant or to deny attorney's fees in a declaratory judgment action is a decision that is within the discretion of the trial court. The trial court's award of attorney's fees will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). A trial court may, in its discretion, in a declaratory judgment action, award attorney's fees to the prevailing party, may decline to award attorney's fees to either party, or may award attorney's fees to the nonprevailing party, regardless of which party sought declaratory judgment. *Ochoa v. Craig*, 262 S.W.3d 29, 33 (Tex. App.—Dallas 2008, pet. denied).

Because the award of attorney's fees under the Declaratory Judgments Act is committed to the discretion of the trial court, we review the award under an abuse of discretion standard. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). The fees must be reasonable and necessary as well as equitable and just. *Id.* Whether the fees are reasonable and necessary are questions of fact, whereas whether the fees are equitable and just are questions of law. *Id.* A trial court abuses its discretion when it rules arbitrarily, unreasonably, or without regard to guiding legal principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). It is also an abuse of

discretion to rule without supporting evidence that is factually sufficient. *Bocquet*, 972 S.W.2d at 21. Therefore, in reviewing an attorney fee award under the Act, we must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary or when the award was inequitable or unjust. *Id.*

The court in *Bocquet* wrote: "Unreasonable fees cannot be awarded, even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees. This multi-faceted review involving both evidentiary and discretionary matters is required by the language of the Act." *Id.*

Neidert makes the argument that this case was a simple, uncomplicated claim for declaratory relief; that the amounts awarded were neither reasonable nor necessary; and that the award was not equitable or just. She points out, and the record of the hearing on attorney's fees shows, that no depositions were taken, that the petition was never amended, that there were "no significant discovery fights," that there was no mediation, that no fees were expended in settlement discussions, and that the case was resolved by summary judgment.

Neidert also argues that there is no evidence, except for conclusory statements, of any of the criteria set forth by the court in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex. 1997). There, the court set forth certain factors that a factfinder should consider when determining the reasonableness of an attorney's fee. Those factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

10

*Arthur Andersen*, 945 S.W.2d at 818 (alteration in original) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04, *reprinted* in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R., art. X, § 9)).

We may reverse a trial court for an abuse of discretion only when we find that the trial court acted in an unreasonable or arbitrary manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). In other words, a trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Id.* at 241-42. A court of appeals may not reverse for abuse of discretion merely because it disagrees with a decision by the trial court, if that decision was within the trial court's discretionary authority. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

Collier and Searls respond to Neidert's position by asserting that the trial court took the complexity of the case into account along with "the myriad of issues and types of law involved." They also argue that it was difficult to untangle the chains of title involving twenty years of transactions and the many estates and trusts that were involved.

Randall L. Rouse was one of Collier and Searls's attorneys. He testified that he had practiced law since 1976 (in the Midland-Odessa area since 1980); that he was familiar with the reasonable and customary fees in the area; that the oil and gas properties involved were located in Texas, New Mexico, and eight other states and involved over 300 properties; that Neidert had requested extensive document production during discovery; that, after working on the case for approximately one year, a motion for summary judgment was filed based on the settlement and release agreements; and that there was an "enormous amount of work on the research end of the title." Rouse testified that the reasonable, necessary, fair, and equitable attorney's fees through the time of the hearing on attorney's fees was $128,222.50. He also testified that reasonable and necessary attorney's fees on appeal would be as follows: $25,000 in the event of an appeal to the court of appeals; $10,000 for making and responding to a petition for review to the Texas Supreme Court; and $25,000 in the event that a petition for review is granted by the Texas Supreme Court.

When the trial court awarded attorney's fees, it awarded the sum of $100,683. We cannot say that the award of attorney's fees in this contested case, with the facts as we have outlined them, was neither just nor equitable. Further, as the factfinder on the issues of the

reasonableness and necessity of the attorney's fees, the trial court, as we have set out, had evidence before it to support its award.

We cannot be certain that Neidert is complaining about the award of attorney's fees on appeal, but her point could be taken as broad enough to include those fees as well. We note that the award of appellate attorney's fees in this case is not conditioned upon a successful outcome. An award of attorney's fees that is unconditional has a chilling effect on the paying party's exercise of legal rights. *In re Ford Motor Co.*, 988 S.W.2d 714, 722 (Tex. 1998) (orig. proceeding). Therefore, an award of appellate attorney's fees must be conditioned on the appeal being unsuccessful. *See In re Ford Motor Co.*, 988 S.W.2d at 721; *see also Goebel v. Brandley*, 76 S.W.3d 652, 658-59 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing this rule in a declaratory judgment case), *disapproved on other grounds*, *Martin v. Amerman*, 133 S.W.3d 262, 268 (Tex. 2004). When there is an award of unconditional attorney's fees on appeal, we will modify the judgment so that the award depends on the paying party's lack of success on appeal. *Hoefker v. Elgohary*, 248 S.W.3d 326, 332 (Tex. App.—Houston [1st Dist] 2007, no pet.). The Sixth Issue is sustained in part.

We affirm the judgment of the trial court, except as to the award of attorney's fees on appeal, which we modify to condition those awards upon Neidert's lack of success on appeal.


JIM R. WRIGHT
CHIEF JUSTICE


September 29, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.