Opinion filed September 29,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00007-CV

                                                    __________

 

                                    LINDA
S. NEIDERT, Appellant

 

                                                             V.

 

                SUSAN J.
COLLIER AND JOHN P. SEARLS, Appellees



 

                                   On
Appeal from the 70th District Court

 

                                                             Ector
County, Texas

 

                                                  Trial
Court Cause No. A-125,758

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            In
this declaratory judgment action, the trial court held that Linda S. Neidert
owned no interest in certain oil, gas, and other properties and also awarded
Susan J. Collier and John P. Searls attorney’s fees.  However, the court did
not dispose of a breach of contract action included in the relief sought by Susan
J. Collier and John P. Searls against Linda Neidert.  Therefore, the judgment
was not a final, appealable one.  We abated this appeal until such time as the
trial court entered a final, appealable judgment.  The trial court has now
severed the breach of contract claim from the cause of action made the subject
of this appeal.  The judgment is now final, and the appeal is reinstated.  Because
we find that two settlement and release agreements entered into by Neidert with
Collier and Searls are dispositive and that appellate attorney’s fees must be
conditional, we modify and affirm.

            John
W. Peery and Bernice C. Peery were husband and wife.  Jeanne Alice [Sally] Peery
Searls was the only child ever born to them.  Jeanne Alice was married to
Robert S. Searls Jr., and they had three children, the parties to this appeal,
Neidert, Collier, and John P. Searls.  We will refer to Robert S. Searls Jr. as
“Robert” and to John P. Searls as “Searls.”

            John
Peery died on February 1, 1970.  By his will, he left his wife, Bernice,
certain specific bequests that did not include any oil and gas interests.  He
left one-half of the rest of his property to Jeanne Alice and the other
one-half to three separate trusts.  One of the trusts was for Neidert’s benefit,
another was for the benefit of Collier, and the other for the benefit of Searls. 
In accordance with the provisions of the trusts, each was distributed to the
named beneficiary free of any trust.

            On
January 10, 1985, Bernice executed a power of attorney in favor of Jeanne Alice’s
husband, Robert.  By sometime in 1989, Robert, acting under the power of
attorney from Bernice, had transferred all oil and gas interests owned by
Bernice to Jeanne Alice.

            Bernice
died on December 28, 1993.  By her will, Bernice left certain specific bequests,
which did not include any oil and gas interests, to Jeanne Alice.  The
remainder of her estate was distributed one-half to Jeanne Alice and one-half
to Jeanne Alice as trustee for Neidert, Collier, and Searls.  Jeanne Alice was
to receive the net income from those trusts for life and, at her death, the
trust property was to be distributed to Neidert, Collier, and Searls.

            Robert
died on March 11, 2002.  By his will, Robert left certain specific bequests to Jeanne
Alice; they did not include any oil and gas interests.  The remainder he left
in trust for Jeanne Alice’s benefit.  On July 17, 2003, Jeanne Alice, in
exchange for cash, stocks, and bonds, purchased all oil and gas interests owned
by the trust.  At Jeanne Alice’s death, the trust estate, consisting of cash,
stocks, and bonds, was distributed to Neidert, Collier, and Searls.

            Jeanne
Alice died on October 10, 2003.  She left each of her children, Neidert,
Collier, and Searls, certain specific bequests; the specific bequests did not
include oil and gas interests.  By the terms of her will, Collier and Searls received
all of Jeanne Alice’s interest in any oil and gas properties.

            By
virtue of the foregoing, Collier and Searls claim to be the owners of all of
the oil and gas interests that had been owned by Bernice, Bernice’s trust,
Robert, Robert’s trust, and Jeanne Alice.  They do not dispute that Neidert
owns the oil and gas interests she received in the distribution under the trust
created in John W. Peery’s will.

            On
May 14, 2004, Neidert, Collier, and Searls executed a “Settlement and Release
Agreement.”  Collier and Searls assert that, by this document, Neidert released
all claims against Robert’s estate, Jeanne Alice’s estate, and the trusts
created in connection with those estates.  They also claim that Neidert gave up
any claims to oil and gas properties situated in Texas and New Mexico that were
owned by Robert or Jeanne Alice; Neidert received cash, stocks, and bonds in
consideration for the execution of the settlement and release document.

            On
December 23, 2005, Neidert, Collier, and Searls executed another “Settlement
and Release Agreement.”  Collier and Searls assert that the effect of this
second instrument was that, by it, Neidert released all claims in connection
with Bernice’s estate and trust, Robert’s estate and trust, and Jeanne Alice’s
estate.  Searls and Collier paid Neidert $161,500 in connection with this
release, and Bernice’s trust paid Neidert an additional $197, 403.

            Claiming
that Robert’s transfers of oil and gas interests, both by gift and otherwise, under
Bernice’s power of attorney were void, Neidert declined to execute instruments
that puportedly would effectuate the settlement agreements.  After Neidert had
declined to execute those instruments, Collier and Searls brought the
underlying lawsuit for declaratory judgment.  In the suit, they sought a
declaration that Neidert owned no interest in the subject oil and gas
properties. 

            Collier
and Searls filed a traditional motion for summary judgment.  Neidert answered
the motion and filed a motion for summary judgment of her own.  Prior to the
hearing on Collier and Searls’s motion, Neidert withdrew her motion for summary
judgment.

            After
the hearing, the trial court granted Collier and Searls’s motion for summary
judgment and held that Neidert had no ownership interest in and to any assets or
oil and gas properties owned by Bernice or the trusts created under her will. 
The trial court also held that Neidert owned no interest in any assets or oil
and gas properties owned by Robert or the trusts created under his will.  The
trial court further held that Neidert had no ownership interest in any assets
or oil and gas properties owned by Jeanne Alice.  In its order, the trial court
ordered that Neidert was barred and judicially estopped from claiming any
ownership interests in the assets and oil and gas properties owned by Bernice,
Bernice’s trust, Robert, Robert’s trust, Jeanne Alice, and Jeanne Alice’s
trust.  

            The
trial court awarded Collier and Searls attorney’s fees at the trial level of
$100,683, $25,000 for an appeal to the court of appeals, $10,000 for answering a
petition for review to the Texas Supreme Court, and $25,000 if a petition for
review were to be granted.

            Neidert
presents us with six issues in this appeal.  First, she takes the position that
gift conveyances under a power of attorney are void when the power of attorney
does not authorize the attorney-in-fact to make gifts.  Secondly, Neidert
argues that conveyances of oil, gas, and other mineral interests by an
attorney-in-fact are void unless the power of attorney specifically authorizes
conveyances of oil, gas, and other minerals.  Next, Neidert asserts that assignments
of partnership interests are not effective when made after the partnership has
terminated.  In her fourth issue on appeal, Neidert takes the position that,
since the types of conveyances asserted in her first three points are void, a
release cannot cure those instruments.  In her fifth issue on appeal, Neidert
asks this question: “Could the particular Release signed by these parties be
properly construed to release Linda S. Neidert’s entitlement to receive her
share of properties owned by the Trust of which she was a beneficiary?” 
Finally, Neidert takes issue with the award of attorney’s fees.

            Because
we find them to be dispositive of this appeal, we will first address the issues
related to the settlement and release of the claims made the basis of this
lawsuit.  Pursuant to Tex. R. App. P.
47.1, we need not address the first three issues.

            Collier
and Searls’s motion for summary judgment is a traditional one.  See Tex. R. Civ. P. 166a(c).  We
review the trial court’s summary judgment de novo. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).

            Where,
as here, a trial court’s order granting summary judgment does not specify the
ground or grounds relied upon for its ruling, summary judgment will be affirmed
on appeal if any of the summary judgment grounds advanced by the movant are
meritorious.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001);
Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).  A trial court must
grant a traditional motion for summary judgment if the moving party establishes
that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law.  Rule 166a(c); Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991).  To establish a right to recover as a matter
of law, a plaintiff, as movant, must prove conclusively all elements of its
cause of action.  Safeco Ins. Co. of America v. Gaubert, 829 S.W.2d 274,
278 (Tex. App.—Dallas 1992, writ denied).  Once the movant establishes a right
to summary judgment, the nonmovant must come forward with evidence or law that
precludes summary judgment.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678-79 (Tex. 1979).  When reviewing a traditional summary
judgment, an appellate court considers all the evidence and takes as true
evidence favorable to the nonmovant.  Am. Tobacco Co.v. Grinnell, 951 S.W.2d
420, 425 (Tex.1997); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548-49 (Tex. 1985).  The appellate court “must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented” and may not ignore “undisputed evidence in the record that
cannot be disregarded.”  Goodyear Tire & Rubber Co. v. Mayes, 236
S.W.3d 754, 755, 757 (Tex. 2007).

            Collier
and Searls assert that, by the May 14 “Settlement and Release Agreement,”
Neidert released all claims against Robert’s estate, Jeanne Alice’s estate, and
the trusts created in connection with those estates.  They also claim that Neidert
gave up any claims to oil and gas properties situated in Texas and New Mexico
that were owned by Robert or Jeanne Alice; Neidert received cash, stocks, and
bonds in consideration for the execution of the settlement and release
document.

            Collier
and Searls maintain that, by the December 23 “Settlement and Release Agreement,”
Neidert released all of her claims that related to Bernice’s estate and trust,
Robert’s estate and trust, and Jeanne Alice’s estate.  Collier and Searls paid
Neidert $161,500 in connection with this release, and Bernice’s trust paid
Neidert an additional $197,403. 

            A
release is a contract, and the construction of it is governed by the general rules
relating to contracts.  Loy v. Kuykendall, 347 S.W.2d 726, 728 (Tex. Civ.
App.—San Antonio 1961, writ ref’d n.r.e.).  When we construe releases, we
ascertain and give effect to the intention of the parties.  Id.  A
release must be considered as a whole in order to give effect to the general
purpose and true intention of the parties with respect thereto.  Id.  

            When
an unambiguous writing has been entered into, the courts will give effect to
the intention of the parties as expressed or as is apparent in the writing.  City
of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968). 
Normally, the instrument alone will be deemed to express the intention of the
parties; it is the objective, not the subjective, intent that controls.  Barker
v. Roelke, 105 S.W.3d 75, 83 (Tex. App.—Eastland 2003, pet. denied).

            Whether
a contract is ambiguous is a question of law.  Kelley-Coppedge, Inc. v.
Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  The court determines
the question by examining the contract as a whole, in light of the
circumstances that existed when the parties entered into the contract.  Columbia
Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). 
A court may conclude that a contract is ambiguous even though the parties did
not plead ambiguity.  Sage Street Assocs. v. Northdale Constr. Co., 863
S.W.2d 438, 445 (Tex. 1993).  A contract is not ambiguous if it is worded so that
it can be given a certain or definite legal meaning or interpretation.  State
Farm Fire & Cas. Co. v. Vaughan, 968 S.W.2d 931, 933 (Tex. 1998); Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  A contract is ambiguous when
its meaning is uncertain and doubtful or when it is reasonably susceptible to
more than one meaning.  Kelley-Coppedge, 980 S.W.2d at 464; Coker,
650 S.W.2d at 393-94.   An ambiguity does not arise just because the parties
advance conflicting interpretations.  980 S.W.2d at 465.  Only when a contract
is susceptible to two or more reasonable interpretations, after applying the
applicable rules of contract construction, is the contract ambiguous.  Id.
 If a contract is ambiguous, then a fact issue exists regarding the intent of
the parties, and summary judgment is improper.  Coker, 650 S.W.2d at
394.  The interpretation of an unambiguous contract is a question of law that
we review de novo.  Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.,
297 S.W.3d 248, 252 (Tex. 2009); ACS Investors, Inc. v. McLaughlin, 943
S.W.2d 426, 430 (Tex. 1997).

            There
are additional rules governing the interpretation of releases.  See Nat’l
Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am., 955 S.W.2d 120,
128 (Tex. App.—Houston [14th Dist.] 1997), aff’d, 20 S.W.3d 692 (Tex.
2000).  We construe general categorical releases narrowly.  Victoria Bank &
Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991).  Further, we construe
a release in light of the facts and circumstances surrounding its execution.  Id.
at 939.         

            To
effectively release a claim, the releasing document must “mention” the claim.  Mem’l
Med. Ctr. of E. Tex. v. Keszler, 943 S.W.2d 433, 434-35 (Tex. 1997); Victoria
Bank & Trust, 811 S.W.2d at 938.  That does not mean, however, that
broad-form releases are forbidden.  Keck, Mahin & Cate v. Nat’l Union
Fire Ins. Co. of Pittsburg, Pa., 20 S.W.3d 692, 698 (Tex. 2000).  The
parties are not required to identify every potential cause of action related to
the subject matter of the release.  Id.  Valid releases may “encompass
unknown claims and damages that develop in the future.”  Id.  Claims
clearly not within the subject matter of the release are not discharged. Victoria
Bank & Trust, 811 S.W.2d at 938 (settlement agreement specifically
limited to a particular note).  Conversely, claims that are clearly within the
subject matter of the settlement or release are discharged.  Id.

            We
will first examine the May 14 agreement.  The agreement contains various
recitals regarding Robert’s death, the probate of his will, and a certain testamentary
trust created by him.  The agreement also contains references to Jeanne Alice’s
death and the probate of her will.  The agreement specifically provides that
the parties “desire to enter into a settlement agreement resolving all claims
relating to the estates of Robert Searls and Sally [Jeanne Alice] Searls which
have arisen or could have arisen, known or unknown, among the Parties.”

            The
agreement then contains the following paragraph:

            3.1 
NOW, THEREFORE, in consideration of the execution of this Agreement and the
performance of the further terms as set out below, which all Parties represent
is sufficient consideration, all parties release the others as follows:

 

            a. 
Neidert, on her own behalf and on behalf of her family, her heirs,
representatives, attorneys, successors and assigns, does fully release, demise,
quitclaim, and forever discharge, Re-spondents and their families, their heirs,
representatives, attorneys, successors and assigns of each from any and all
claims (including but not limited to any claims asserted or that could have
been asserted, but excluding any claims for breach of this agreement), causes
of action, liabilities, damages (including attorneys’ fees), and costs, whether
known or unknown, and whether foreseen or unforeseen, which Neidert has ever
had, or now has, or has in the future based upon the facts which occurred up to
the Effective Date, including without limitation any claims relating to the
valuation of the Robert Searls Trust and the Texas and New Mexico oil and gas
properties and the actions of Sally [Jeanne Alice] Searls in her capacity as
Independent Executrix of the estate of Robert Searls.

 

                        The December 23 agreement
contains various recitals regarding Bernice’s death, her estate, and
testamentary trusts created by her.  The agreement also contains recitals
concerning Jeanne Alice’s death and her estate.  The parties also recited in
the agreement that there were differing opinions among the parties as to
certain values, methods of distribution, and payment of certain loans and that
“the Parties desire to enter into a Settlement and Release Agreement in
connection with any and all of Linda Neidert’s claims known and unknown claims
resulting from the Bernice C. Peery Trust.”  The parties then provided as
follows:

            3.1 NOW,
THEREFORE, in consideration of the execution of this Agreement and the
performance of the further terms as set out below, which all Parties represent
is sufficient consideration, Linda Neidert on her own behalf, her family,
heirs, representatives, attorneys, successors and assigns, does fully release,
demise, quitclaim, and forever discharge, release Susan J. Collier,
Individually and as Trustee of Bernice C. Peery Trust and Independent Executrix
of the Estate of Robert S. Searls, Jr., deceased and the Estate of Jeannene
Alice Searls, deceased, John P. Searls, Individually and as former Trustee of
Bernice C. Peery Trust, the Estate of Roberts S. Searls, Jr., deceased and the
Estate of Jeannene Alice Searls, deceased and John L. Roberts Interiors, Inc.
and the officers, directors, shareholders, partners, parent companies[,]
subsidiaries, affiliates, employees, representatives, executrix’s, trustees,
attorneys, successors and assigns of each from any and all claims (including
but not limited to any claims asserted or that could have been asserted in the
suit, but excluding any claims for breach of this agreement), all causes of
action, claims, liabilities, damages (including attorneys’ fees), and costs, whether
known or unknown, and whether foreseen or unforeseen, which Linda Neidert has
or have ever had, or now have, or have in the future based upon the facts which
occurred up to the Effective Date, including without limitation any claims
relating to the Bernice C. Peery Trust, the Estate of Robert S. Searls, Jr.,
deceased and the Estate of Jeannene Alice Searls, deceased, or obligations from
John L. Roberts Interiors, Inc.

  

           We hold that, as a matter of law, the settlement and release
agreements are not ambiguous.  It is clear from within the four corners of the
settlement and release agreements that the subject matter of the settlement and
release agreements was to settle any and all of Neidert’s claims to the
ownership of all oil and gas interests (and other interests not involved in
this lawsuit) related to John Peery, Bernice Peery, Robert Searls, or Jeanne Alice
Searls or to their estates or to trusts created by them.  Because the
settlement and release agreements are not ambiguous and because the claims
involved in this lawsuit are clearly within the subject matter of the
settlement and release agreements, the trial court did not err if it granted
summary judgment based upon the validity and effect of the agreements.

           Neidert argues that, even if the settlement and release
agreements are valid, they cannot bring life to documents executed by Robert as
attorney-in-fact that were not within the scope of Bernice’s power of attorney
and were therefore void.  We think that it is important to note that the trial
court only declared that Neidert did not own the oil and gas interests; it did
not decide any other issues of ownership.  And, based upon our holding, whether
any of those instruments were void would not affect Neidert because she
released any claims that she otherwise might have had, beneficial or
otherwise.  Neidert’s fourth and fifth issues are overruled.  

           In her sixth issue, Neidert argues that the trial court erred when
it awarded attorney’s fees because they were neither equitable nor just, nor
were they reasonable and necessary.  The trial court held a hearing on the
award of attorney’s fees.  At the conclusion of the hearing, it awarded Collier
and Searls $100,683 in attorney’s fees for work through the date of the
hearing. It also awarded appellate attorney’s fees as follows:  $25,000 in the
event of an appeal to the court of appeals; $10,000 for making and responding
to a petition for review to the Texas Supreme Court; and $25,000 in the event
that a petition for review is granted by the Texas Supreme Court.

           Section 37.009 of the Texas Civil Practice and Remedies Code
addresses costs and fees under the Declaratory Judgments Act.  That section provides,
“In any proceeding under this chapter, the court may award costs and reasonable
and necessary attorney’s fees as are equitable and just.”  Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(Vernon 2008).  Whether to grant or to deny attorney’s fees in a declaratory judgment
action is a decision that is within the discretion of the trial court.  The
trial court’s award of attorney’s fees will not be reversed on appeal absent a
clear showing that it abused that discretion.  Oake v. Collin County, 692
S.W.2d 454, 455 (Tex. 1985).  A trial court may, in its discretion, in a declaratory
judgment action, award attorney’s fees to the prevailing party, may decline to
award attorney’s fees to either party, or may award attorney’s fees to the
nonprevailing party, regardless of which party sought declaratory judgment.  Ochoa
v. Craig, 262 S.W.3d 29, 33 (Tex. App.—Dallas 2008, pet. denied).  

           Because the award of attorney’s fees under the Declaratory
Judgments Act is committed to the discretion of the trial court, we review the
award under an abuse of discretion standard.  Bocquet v. Herring, 972
S.W.2d 19, 21 (Tex. 1998).  The fees must be reasonable and necessary as well
as equitable and just.  Id.  Whether the fees are reasonable and
necessary are questions of fact, whereas whether the fees are equitable and
just are questions of law.  Id.  A trial court abuses its discretion
when it rules arbitrarily, unreasonably, or without regard to guiding legal
principles.  Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997).  It is
also an abuse of discretion to rule without supporting evidence that is
factually sufficient.  Bocquet, 972 S.W.2d at 21.  Therefore, in
reviewing an attorney fee award under the Act, we must determine whether the
trial court abused its discretion by awarding fees when there was insufficient
evidence that the fees were reasonable and necessary or when the award was
inequitable or unjust.  Id.  

           The court in Bocquet wrote: “Unreasonable fees cannot be
awarded, even if the court believed them just, but the court may conclude that
it is not equitable or just to award even reasonable and necessary fees.  This
multi-faceted review involving both evidentiary and discretionary matters is
required by the language of the Act.”  Id.

           Neidert makes the argument that this case was a simple,
uncomplicated claim for declaratory relief; that the amounts awarded were
neither reasonable nor necessary; and that the award was not equitable or just. 
She points out, and the record of the hearing on attorney’s fees shows, that no
depositions were taken, that the petition was never amended, that there were
“no significant discovery fights,” that there was no mediation, that no fees
were expended in settlement discussions, and that the case was resolved by
summary judgment.  

           Neidert also argues that there is no evidence, except for
conclusory statements, of any of the criteria set forth by the court in Arthur
Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812 (Tex. 1997). 
There, the court set forth certain factors that a factfinder should consider
when determining the reasonableness of an attorney’s fee.  Those factors
include:

            (1)
the time and labor required, the novelty and difficulty of the questions
involved, and the skill required to perform the legal service properly;

 

            (2)
the likelihood . . . that the acceptance of the particular employment will
preclude other employment by the lawyer;

 

            (3)
the fee customarily charged in the locality for similar legal services;

 

            (4)
the amount involved and the results obtained;

 

            (5)
the time limitations imposed by the client or by the circumstances;

 

            (6)
the nature and length of the professional relationship with the client;

 

            (7)
the experience, reputation, and ability of the lawyer or lawyers performing the
services;  and

 

            (8)
whether the fee is fixed or contingent on results obtained or uncertainty of
collection before the legal services have been rendered.  

Arthur
Andersen, 945 S.W.2d at 818 (alteration in original) (citing Tex. Disciplinary R. Prof’l Conduct 1.04,
reprinted in Tex. Gov’t Code Ann.,
tit. 2, subtit. G app. A (Vernon 2005) (Tex.
State Bar R., art. X, § 9)).

            We
may reverse a trial court for an abuse of discretion only when we find that the
trial court acted in an unreasonable or arbitrary manner.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985).  In other
words, a trial court abuses its discretion when it acts “without reference to
any guiding rules and principles.”  Id. at 241-42.  A court of appeals
may not reverse for abuse of discretion merely because it disagrees with a
decision by the trial court, if that decision was within the trial court’s
discretionary authority.  Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223,
226 (Tex. 1991).

           Collier and Searls respond to Neidert’s position by asserting
that the trial court took the complexity of the case into account along with
“the myriad of issues and types of law involved.”  They also argue that it was
difficult to untangle the chains of title involving twenty years of
transactions and the many estates and trusts that were involved.  

           Randall L. Rouse was one of Collier and Searls’s attorneys. 
He testified that he had practiced law since 1976 (in the Midland-Odessa area
since 1980); that he was familiar with the reasonable and customary fees in the
area; that the oil and gas properties involved were located in Texas, New
Mexico, and eight other states and involved over 300 properties; that Neidert
had requested extensive document production during discovery; that, after
working on the case for approximately one year, a motion for summary judgment
was filed based on the settlement and release agreements; and that there was an
“enormous amount of work on the research end of the title.”  Rouse testified
that the reasonable, necessary, fair, and equitable attorney’s fees through the
time of the hearing on attorney’s fees was $128,222.50.  He also testified that
reasonable and necessary attorney’s fees on appeal would be as follows:  $25,000
in the event of an appeal to the court of appeals; $10,000 for making and
responding to a petition for review to the Texas Supreme Court; and $25,000 in
the event that a petition for review is granted by the Texas Supreme Court.

           When the trial court awarded attorney’s fees, it awarded the
sum of $100,683.  We cannot say that the award of attorney’s fees in this
contested case, with the facts as we have outlined them, was neither just nor
equitable. Further, as the factfinder on the issues of the reasonableness and
necessity of the attorney’s fees, the trial court, as we have set out, had
evidence before it to support its award.  

           We cannot be certain that Neidert is complaining about the
award of attorney’s fees on appeal, but her point could be taken as broad
enough to include those fees as well.  We note that the award of appellate attorney’s
fees in this case is not conditioned upon a successful outcome.   An award of
attorney’s fees that is unconditional has a chilling effect on the paying party’s
exercise of legal rights.  In re Ford Motor Co., 988 S.W.2d 714, 722
(Tex. 1998) (orig. proceeding).  Therefore, an award of appellate attorney's
fees must be conditioned on the appeal being unsuccessful.  See In re Ford
Motor Co., 988 S.W.2d at 721; see also Goebel v. Brandley, 76
S.W.3d 652, 658-59 (Tex. App.—Houston [14th Dist.] 2002, no pet.)  (citing this
rule in a declaratory judgment case), disapproved on other grounds, Martin
v. Amerman, 133 S.W.3d 262, 268 (Tex. 2004).  When there is an award of
unconditional attorney’s fees on appeal, we will modify the judgment so that
the award depends on the paying party’s lack of success on appeal.  Hoefker
v. Elgohary, 248 S.W.3d 326, 332 (Tex. App.—Houston [1st Dist] 2007, no
pet.).  The Sixth Issue is sustained in part.

           We affirm the judgment of the trial court, except as to the
award of attorney’s fees on appeal, which we modify to condition those awards
upon Neidert’s lack of success on appeal.

 

 

                                                                                               JIM
R. WRIGHT

                                                                                               CHIEF
JUSTICE 

 

September 29,
2011

Panel consists of:  Wright, C.J.,

McCall, J., and Kalenak, J.